# NATIONAL BANK OF BOYERTOWN VS SCHUFELT.

## Opinion delivered September 23, 1903.

1. *Jury—Challenges for Cause—Refusal to Sustain not Error, When.*

   A refusal to sustain a challenge for cause which should be sustained is not ground for reversal unless it be shown that an objectionable juror was forced upon the challenging party after exhausting his peremptory challenges, even though compelled to use a peremptory challenge to remove the juror rightfully challenged for cause.

2. *Evidence—Rulings on Admission not Considered Unless Exception Saved, as Well as Objection Made.*

   Where evidence is objected to, but no exception saved to the ruling of the court upon such objection, it is presumed the ruling was satisfactory, and error assigned thereon cannot be considered on appeal.

3. *Chattel Mortgage—Description of Property—Location a Necessary Part Thereof—Instructions.*

   In an action of replevin to recover certain mortgaged cattle, where it appears that two bunches of cattle of practically identical description, but located at two different points were mortgaged to different parties, and the herds were afterwards intermingled, it became essential, in identifying the cattle claimed by the mortgagees, to determine which of the cattle claimed were those originally in the respective locations, and the jury were properly so instructed.

4. *Replevin—Chattel Mortgage—Instructions.*

   In an action of replevin to secure possession of certain mortgaged cattle an instruction to the jury that the question for them to determine is whether or not any of the cattle "levied on" under the writ, were contained in the mortgage is not erroneous where the court also explained that this meant whether any of the cattle levied on were those meeting the description contained in the mortgage.

5.   *Verdict—Not Set Aside Where Evidence is Conflicting.*

> Where the question of the identity of certain cattle is left to the jury, and the evidence thereon is conflicting, the verdict of the jury will not be set aside.

Appeal from the United States Court for the Northern District.

JOSEPH A. GILL, Judge.

Action in replevin by the National Bank of Boyertown against John H. Schufelt.   Judgment for defendant.   Plaintiff appeals.   Affirmed.

This is an action of replevin brought by the appellant (plaintiff below) to recover of the appellee (defendant below) 100 head of cattle, which plaintiff claims it owns by virtue of a certain chattel mortgage on 326 head of cattle, containing the 100 head sued for, executed on October 29, 1898, to secure the payment of a note for $9,600.00 due in 120 days, drawing interest etc.   Said note and mortgage were executed by one Thomas W. Herrelson to Olinger & Lloyd, a Kansas City firm, and were by that firm duly indorsed and assigned to this plaintiff.   Upon the same day another mortgage was executed by the said Herrelson to the same firm to secure the payment of a debt of $6,700, but this mortgage was on another herd of cattle, and was assigned to one Franklin, from whom it is claimed the defendant purchased the cattle in controversy.   The cattle in the first mortgage assigned to plaintiff, were described as follows:   "326 head of native steers cattle, three years old and upwards, average weight about 950 pounds. * * * For further description, said cattle are marked and branded as follows:   All of the above cattle branded thus:   D, on left side.   The above cattle located "   ᵊ feed lot on Schufelt Ranch, three miles west of Lenapah,

* * * and being all of the property of the above description owned or controlled by mortgagor now on said premises." The description of the cattle in the second mortgage, assigned to Franklin, defendant's grantor, is: "342 head of native steers cattle, two years old and upwards, average weight about 800 pounds. * * * For further and better description said cattle are marked and branded with one or more of the marks and brands as follows, viz.: * * * all branded thus: D. And kept and confined in my ranch on Hog Shooter creek, ten miles southwest of Lenapah, * * * and being all the property of the above description owned or controlled by the mortgagor now on said premises." Some time after the execution of these mortgages, both herds of cattle were turned loose and commingled together upon the range. Quite a number of them, however, had been sold, and credit given therefor on the notes. Franklin gathered together about 100 head of these cattle as being of those which were embraced in the mortgage assigned to him, and turned them over to the defendant, first as his agent to look after and care for them, and afterward sold them to him. The plaintiff claimed that these 100 head thus in the defendant's possession were included in his mortgage, and brought this action of replevin to recover them. The case was tried to a jury, verdict for defendant, and regularly appealed.

*W. H. Kornegay* and *Luther Perkins*, for appellant.

*John B. Turner* and *William T. Hutchings*, for appellee.

CLAYTON, J. There are filed with the brief of appellant five specifications of error. They are as follows:

"(1)   The court erred in failing to grant a new trial.

"(2)   The court erred in overruling plaintiff's challenge to the juror W. J. Tiger.

"(3)   The court erred in allowing witness German to

testify as to learning that the money derived from the sale of the
cattle shipped by Herrelson to the M., K. & T. Commission Co.
had been turned over to Shaner.

"(4)   The court erred in instructing the jury that the
question to be decided was how many of the cattle the marshal
had levied on were located in the feed lot; the instruction com-
plained of being as follows:   'The court instructs the jury that
on the 28th day of October, 1898, Thomas W. Herrelson executed
to Olinger & Lloyd two chattel mortgages—one on 342 head of
cattle described therein as two years old and upwards, and the
other on 326 head of cattle described therein as three years old
and upwards, all of said cattle being branded alike, and the first
of said cattle above referred to being located on Herrelson's Hog
Shooter Ranch, ten miles southwest of Lenapah, Ind. Ter., and
the balance of said cattle being located three miles west of
Lenapah, Ind. Ter., on the Schufelt Ranch.   The question for
you to decide in this case is whether the mortgage of the plaintiff
which is on the cattle above described as 326 covered the cattle
levied upon by the marshal under the writ of replevin in this
action, or any part of same; that is, whether they or any part of
them were located in the feed lot as described in the mortgage of
October 28, 1898, now owned by plaintiff.'   And the following
instruction, given by the court of its own motion:   'This is a
civil action in replevin, brought by the plaintiff to recover certain
cattle of the defendant.   The plaintiff claims that he owns the
same under and by virtue of a certain chattel mortgage that is in
evidence before you.   The defendant claims that he owns them
under and by virtue of the second mortgage that is in evidence
before you.   The question for you to determine is as to whether
or not any of the cattle levied upon in this action by the marshal
under the writ of replevin is contained in that second mortgage
and in the first mortgage, or rather to separate them if you can;
and the evidence shows there should be a separation of such

cattle as belonged to the first mortgage and such cattle as belonged to the second mortgage.'

"(5)  The court erred in failing to set aside the verdict as being contrary to law and not supported by sufficient evidence."

We will first consider the second specification—that the court erred in overruling plaintiff's challenge to juror W. T. Tiger.  The juror Tiger was duly summoned, and was serving on the regular panel.  He was selected as one of the eighteen offered to the respective parties from which to select the jury. It was shown that he had served as a juror in the court at which the trial was being had at a previous term within a year, and was thereupon challenged by the plaintiff on that ground for cause. The court overruled the challenge, and exceptions were saved. It is contended that the statute of 1889 entitled "An act to establish a court in the Indian Territory, and for other purposes, (Act Cong. March 1, 1889, c. 333, 25 Stat. 783), is in force.  If so, a juror can serve but once in each year, and service within a year is ground for a challenge for cause.  If this be conceded, and if it were error in the court to overrule plaintiff's challenge for cause, is he in an attitude in which he can now complain? Mr. Thompson, in his work on Trials, vol. 1, § 115, says:  "The sound and prevailing view is that a party cannot, on error or appeal, complain of a ruling of the trial court in overruling his challenge for cause, if it appear that when the jury had been completed his peremptory challenges were not exhausted; since he might have excluded the obnoxious juror by a peremptory challenge, and therefore the error is to be deemed an error without injury.  For the same reason, if the court erroneously overrules a challenge for cause, and thereafter the challenging party excludes the obnoxious juror by a peremptory challenge, he cannot assign the ruling of the court for error, unless it appear that before the jury was sworn his quiver of peremptory challeng-

es was exhausted; in which case there is room for the inference that the erroneous ruling of the court may have resulted in leaving upon the panel other obnoxious jurors whom the party might, but for the ruling, have excluded by peremptory challenge. Some courts therefore hold that it is enough, in such a juncture, to show that his peremptory challenges were exhausted before the jury was sworn. But others take what seems to be the better view—that it must also appear not only that his peremptory challenges were exhausted, but that some objectionable person took his place on the jury, who otherwise would have been excluded by a peremptory challenge." And in section 120, vol. 1, the same author uses the following language: "Finally, it is a rule of paramount importance that errors committed in overruling challenges for cause are not grounds of reversal, unless it be shown an objectionable juror was forced upon the challenging party after he had exhausted his peremptory challenges." In Holt vs State, 9 Tex. App. 571, the court say: "Unless objection is shown to one or more of the jury who tried the case, the antecedent rulings of the court upon the competency or incompetency of jurors who have been challenged and stood aside will not be inquired into in this court." See, also, Spies vs People; 122 Ill. 1, 12 N. E. 865, 17 N. E. 898, 3 Am. St. Rep. 320; Ex parte Spies, 123 U. S. 131, 8 Sup. C. 21, 22, 31 L. Ed. 80; Stewart vs State, 13 Ark. 720. In the case last cited it was held that: "If a party challenges a juror peremptorily when he is not obliged to do so, he waives his exception, and cannot avail himself on error of the exception thus abandoned, and although he may exhaust his right of peremptory challenges." We agree with Mr. Thompson "that it is the better view," and we think it is supported by the weight of authority, that upon error of the court in overruling a challenge for cause, where a peremptory challenge has been used, and the peremptory challenges have been exhausted, the challenging party on error or appeal cannot complain, unless it is further shown that after the challenges had

been exhausted some objectionable person took his place on the jury, who would otherwise have been excluded by a peremptory challenge. The reason is that, although the peremptory challenges may have been exhausted before the completion of the impaneling of the jury, yet those who were afterwards taken may not have been objectionable. It is true they may have been, and, if they were, then the challenging party has suffered a wrong; but, if they were not, he has not been wronged, notwithstanding the fact that he was improperly forced to exhaust one of his challenges. Whether there were or were not objectionable jurors taken after the challenges had been exhausted is a question of fact, and, as the presumptions are always to be taken favorably to the legality of the verdict and the proceedings of the court, he who charges that it was wrongfully procured must prove it; not that the juror whom the party was forced to challenge was disqualified, and subject to challenge for cause, but that some juror who tried the case was disqualified or objectionable. "In all cases where the rulings of the trial court are questioned on error or appeal, those rulings are presumed to be correct until the contrary is shown. It will therefore be presumed, until the contrary appears by the record, that the jurors who tried the case were possessed of the qualifications required by law." 1 Thompson on Trials, 118. "The right to challenge is the right to reject, not to select, a juror." Hayes vs Missouri, 120 U. S. 71, 7 Sup. Ct. 352, 30 L. Ed. 578. And, notwithstanding the plaintiff may have been forced erroneously to exhaust one of his peremptory challenges, if no dissatisfaction were expressed, or proof offered to show that one of the others who was selected after he had exhausted all of his peremptory challenges was objectionable to him, and he would, had he his lost challenge back, have used it to rid the jury of the objectionable person, how can this court know, in the absence of such a record, but that he would not have used the challenge, or that any person objectionable to him sat on the jury that tried the case? The record does

(4)

not show any dissatisfaction expressed by the plaintiff, or objection offered to any juror who tried the case. Nor does it show any bias or prejudice or any other improper condition of mind of any of them. We therefore hold, in the language of Mr. Thompson, above quoted, "that errors committed in overruling challenges for cause are not grounds for reversal unless it be shown an objectionable juror was forced upon the challenging party after he had exhausted his peremptory challenge"; and as the record in this case nowhere shows that there was any person objectionable to the plaintiff selected after he had exhausted his peremptory challenges, there was no reversible error on this assignment.

As to the third specification of error. From the testimony of German it appears that 270 or 280 head of the cattle covered by the mortgages were in the stockyards at Coffeyville, Kan., and about $3,500 in the hands of a commission company in Kansas City, and it was not known at the time to whom this money belonged. It was agreed that it should remain in the hands of the company until they could go down to the territory and see under whose mortgage these cattle might belong, and obtain information as to what cattle the money covered. He further testified as follows: "Mr. Shaner asked me to delay going down to the territory for a few days until he could get a cattle expert, whom he said had been recommended to him—the Mr. Wallace, whose testimony was given in this case; that he was away from Kansas City at that time, and that he could not get him to go down with him for a few days; and we were to wait three or four days for Mr. Wallace to put in an appearance, the understanding between Mr. Shaner and myself being that he could get Mr. Wallace, and I would have some other man, and they could settle it, and, if there was any dispute about it, when we got down there, between them, they could pick a third man. I don't know that there was any one there at the time.' At the expiration of three or four days, when I again saw Mr. Shaner

down at the stockyards, it was agreed that we should meet in
Coffeyville the second day following this occurrence I am now
about to relate, and I left the office of the company and went
downstairs and met some one—I forget who; it may have been
Mr. Lloyd himself; I am not positive about that—and from them
I learned—Mr. Kornegay:   I object to any statement unless the
plaintiff's representative was present.   The Court:   This was in
the presence of Mr. Shaner?   Witness:   No, sir.   The Court:
The court will permit you to state what you learned in general
terms; not what was said.   Witness:   I learned that the entire
amount of money in the hands of the commission company had
been paid to Mr. Shaner.   On learning these facts I got on the
train and went down to Coffeyville that night.''   That part of
the statement of the witness now objected to may be summarized
as follows:   ''I agreed with Mr. Shaner that I would not go to
Coffeyville until two days should elapse.   I violated that agree-
ment because I learned that the money in Kansas City had been
paid out in violation of our understanding.''   As an inducement,
and showing why he went to Coffeyville at once, instead of
waiting two days, as he had agreed, we think the testimony com-
petent.   Beside, there was no exception saved at the time of the
ruling of the court.   It is true that an objection was made, but
after the court ruled upon it, saying the witness could state the
facts in general terms, there was no exception to the ruling, and
under such circumstances it must be presumed that the ruling
was satisfactory.

The objection of the plaintiff to the first instruction in-
cluded in the fourth assignment of error is that it tells the jury
that they were to find whether the mortgage of the plaintiff
covered the cattle, or any part of them located in the feed lot as
described in his mortgage.   It is contended that the place where
the mortgaged property may be located is not a necessary part
of the description; that it is only an addition to the description;

and Jones on Chattel Mortgages and Cobbey on Chattel Mortgages are cited to sustain this view. When these authorities are examined, it will be found that when a mortgagor makes the location of the mortgaged property a part of the description it is to be treated as any other part of it. If it be false, or inconsistent with the rest of the description, it may be rejected; and so may any other part of the description. Section 61 of Jones on Chattel Mortgages, cited by counsel for appellant, is as follows: "A portion of a description which is false or inconsistent with the rest of the description may be rejected if the remainder of the description is sufficient to pass the property. Thus, where a mortgage described the property as 'all the staves I have in Monterey, the same I had of Moses Fargo,' while it appeared in evidence that the mortgagor had no staves in Monterey, but had a quantity in the adjoining town of Sandisfield, near the boundary of Monterey, which he had of Moses Fargo, the first part of the description was rejected as false the remainder being sufficient to pass the property. Thus, also, describing a white horse as a gray horse does not vitiate the mortgage when there are other parts of the description which are correct, and the whole description would not naturally mislead a purchaser. * * * In a mortgage describing a yoke of oxen as four years old at the date of the mortgage a mistake in the age of the oxen, when the mortgagor at that time and afterward had only one yoke of oxen, does not invalidate the mortgage. * * * And so a mortgage of 'all the cattle, consisting of two yoke, aged six and seven years, color red, white and blue, and all other property now in our possession in or about said village,' contains a sufficient description; and it does not matter that the description, 'red, white and blue' does not apply to each of the oxen. A misdescription of the age of horses or cattle mortgaged is not material if the description is otherwise correct." "Where the location described in the mortgage is wholly wrong, it invalidates the mortgage." 1 Cobbey, Chat. Mort. § 177. "Location may

make description certain." Id. 178. "Location should be given, but, if otherwise certain, its omission is not fatal." Id. 179. And thus it will be seen from the authorities cited by appellant's counsel that a description in the mortgage of the location of the mortgaged property is equally important, if not more so, with any other part of the description. Sometimes it may be the only means of identifying the mortgaged property, depending, of course, on the facts. In this case the mortgagor owned a number of cattle, all branded alike. He had divided them into two herds, one consisting of "326 head of native steers, three years old and upwards, of the average weight of 950 pounds, located and in the feed lot on the Schufelt Ranch, three miles west of Lenapah, and being all of the property of the above description owned and controlled by the mortgagor now on said premises." .This was the description of them included in the mortgage assigned to plaintiff. The other lot consisted of "342 head of native steers, two years old and upwards, of the average weight of about 800 pounds, kept and confined in my ranch on Hog Shooter creek, ten miles southwest of Lenapah, and being all of the property of the above description owned or controlled by the mortgagor now on said premises." These were covered by the mortgage under which defendant claims. All of the cattle covered by both mortgages were branded with the letter D. The only difference in the description of the cattle covered by the two mortgages was the age of those which were under three years, the average weight, and the place where located. As before stated, they were, some time after the execution of the mortgages, turned out, and had intermingled. It may have been that other cattle of the mortgagor of the same description as those included in both mortgages had also commingled with them. In such case, the description of the cattle being identical, the only possible proof that those claimed by plaintiff were covered by plaintiff's mortgage would have been to show that at the time of its execution they were in the Schufelt

pen. The plaintiff relies upon the title secured under the mortgage, and must, therefore, prove the cattle within its description.

There was no contention at the trial, nor is there at this time, that the location named in the .mortgage was false, or inconsistent with any other description contained in that instrument, and therefore it stands as a part of the description, to be proved. While the proof offered to show the age of the cattle replevined may have been satisfactory as to that, and would tend to show that they were a part of the cattle penned in the Schufelt lot (and therefore were covered by the plaintiff's mortgage), still they may have been of that age and not in the Schufelt pen, and, if not, they were not covered by the mortgage. And therefore, under these circumstances, it was not improper, but absolutely essential, to charge the jury that the question for them to decide was as to whether these cattle, or any part of the same, were located in the feed lot as described in plaintiff's mortgage. The jury had already been charged as follows: "Under the pleadings and evidence in this case the sole question that you are to determine is the number of cattle sued for that are embraced in the mortgage of the plaintiff, and, if you find that there are any of the cattle sued for embraced in said mortgage, to assess their value, and plaintiff's damages for their detention; and if you find that all or any of the cattle sued for are embraced in plaintiff's mortgage, you will find your verdict in favor of plaintiff and against the defendant for the number of cattle you find that the defendant detained belonging to plaintiff's mortgage, and you will assess their value and plaintiff's damage for their detention." And inasmuch as all concede, and the mortgage itself declares, that those described in the mortgage, and only those, were located in the feed lot, the finding of one of these facts would be the finding of both; and, if the jury should find they were described in the mortgage, they would

necessarily find that at the time of its execution they were in the feed lot, and vice versa. If in the feed lot at that time, they were embraced in the mortgage; but to find that they were included in the mortgage they must first find they were in the feed lot, for that, in this case, is a necessary part of the description.

This specification of error also finds fault with that part of the charge which tells the jury that "the question for them to determine is whether or not any of the cattle levied on by the marshal under the writ of replevin is contained in the mortgage." The objection is to the use of the words "levied on by the marshal under the writ of replevin." The complaint avers that there are 100 head of steers owned by plaintiff in possession of defendant, and prays judgment for them or their value. The answer, after denying the allegations of the complaint, states that the cattle taken under the writ in this cause were the property of his grantor, pleads his mortgage, and that "at the time of bringing this suit and the service of the writ herein he was holding possession of said cattle," etc. The affidavit for the writ, as it appears of record, shows that the writ was sued out to gain possession of that number of steers, and describes them as they are described in the mortgage. The record further shows that the order of delivery was served. The order of delivery, with its return, was not introduced in evidence. But all of the evidence was based on the fact, and the case was tried absolutely on the theory, that the cattle in controversy in the suit were the 100 head which the complaint alleges and the answer admits were in the possession of the defendant at the time the suit was instituted, and which the answer declares had been levied upon. When this instruction was given, the court, in its charge, had already told the jury that the sole question for them to determine was the number of cattle sued for that were embraced in plaintiff's mortgage. And when the instruction complained of was given the court at once explained it away. The language is: "The question for you to decide in this case is whether the mortgage

of the plaintiff which is on the cattle above described as 326 covered the cattle levied upon by the marshal under the writ of replevin in this action, or any part of the same; that is, whether they, or any part of them, were located in the feed lot as described in the mortgage of October 28, 1898, now owned by plaintiff." This alleged error was not set out in the motion for a new trial, and therefore the court below did not have its attention called to it. But we think the charge sufficiently presented the issues to the jury.

The argument is made that the proof clearly showed that the plaintiff should have recovered at least a part of the cattle. The charge of the court left the question clearly to the jury as to whether all or any part of the cattle were embraced in the plaintiff's mortgage. The evidence was conflicting, but there was proof to sustain the verdict. It was for the jury to weigh the evidence, and to determine the credibility of the witness. This they have done on proof, which, in our opinion, is legally sufficient to support the verdict.

Let the judgment of the lower court be affirmed.

RAYMOND and TOWNSEND, JJ., concur.

---

On Motion for Rehearing.

(Oct. 19, 1904).

CLAYTON, J.   An opinion in this case affirming the judgment of the United States Court for the Northern District of the Indian Territory was handed down by us at our last September term; and the case is now before us on a motion for rehearing, filed by the appellant. After a careful consideration of the points raised by the motion, as well as by the brief of appellant's counsel, we are of opinion that the motion is without merit, and, being satisfied with the decision heretofore rendered, the motion for a rehearing is overruled.

RAYMOND, C. J., and TOWNSEND, J., concur.